## SAXTON v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit
June 4, 1929.

No. 8254.

Norman H. Wright, of Oklahoma City, Okl., for appellant.

Roy St. Lewis, U. S. Atty., and Herbert K. Hyde, Asst. U. S. Atty., both of Oklahoma City, Okl.

Before KENYON, Circuit Judge, and FARIS and SANBORN, District Judges.

SANBORN, District Judge. The appellant—defendant in the court below and hereafter so referred to—was tried and convicted in the United States District Court for the

Western District of Oklahoma upon two counts of an information, the first charging possession, and the second transportation of intoxicating liquor in violation of the National Prohibition Act (27 USCA). He was sentenced to pay a fine of $250 under each count, and appeals from the judgment.

The principal contention of the defendant is that there was no substantial evidence to sustain the verdict.

The first government witness was John Heep, a police officer in Oklahoma City, who testified that he and a Mr. Lowe were driving east on Second street about 9 o'clock in the evening of May 16, 1927, the date when the offenses were alleged to have occurred. He observed a man who he thought was the defendant, together with some woman, driving west on the same street. Following the car, he observed a man, who he thought was the defendant, get out of the car and go into a corner drug store. He stopped and examined the car, which he says was a Ford roadster, and found under the hood 31 gallons of whisky. He went into the drug store and there found the defendant, whom he placed under arrest. The defendant denied the ownership of the car or the whisky. The defendant was taken to the police station and the car was also seized and turned over to the federal authorities at the station.

The second witness called by the government was Prohibition Agent Thoroughman, who testified that he was called to the station on the evening of May 16th; that he found the defendant, a Ford coupé and 31 gallons of whisky at that place; that he talked with the defendant on the way from the city jail to the county jail, and, in answer to the question, "What did you say to him?" said:

"Jokingly, I asked him how they came to overtake them, and he said he just couldn't get away. I said, 'What kind of a car were you driving, Curley,' and he said 'A Ford coupé.' I said, 'I thought you drove an automobile.' He said, 'No, if I had had an automobile they wouldn't have caught me.' I asked him if the coupé was clear and he said no, they had a hundred dollar mortgage against it. I asked him who held the mortgage and he said Sam Gill."

On cross-examination, the following questions were asked of Mr. Thoroughman, and the following answers given:

"Q. You say you had that conversation with Curley in a joking way? A. When I asked him how he come to get away, yes, or why he didn't get away.

"Q. And he said just because he couldn't drive fast enough? A. Yes, sir.

"Q. And then you asked him about the car? A. Yes, sir, not in a joking way. I asked him what kind of a car he was driving.

"Q. What did he tell you? A. A Ford coupé."

This was the government's main case, and the defendant demurred to the evidence. The court overruled the demurrer. The defendant testified that he did not drive a Ford coupé that evening, and that he had nothing to do with the liquor. He accounted for his movements up to the time of being arrested in the drug store, and was corroborated to some extent by the witness Sheppard, an ex-police officer of Oklahoma City. On direct examination, the defendant was asked:

"Q. Did you have anything to do with the Ford coupé which the officer testified about which was loaded with thirty-one gallons of intoxicating liquor? A. No, sir, not that I know of.

"Q. At the time you were arrested in this case did you own any other cars other than the Hupmobile? A. Yes, sir.

"Q. What other cars. A. Well, I don't recollect. I have got two stepsons and they both drive my cars.

"Q. Are those stepsons adults or minors? A. Minors.

"Q. Were those cars in their name or your name? A. My name."

On cross-examination, he was asked:

"Q. Do I understand you to say that carload of whisky belonged to your stepson? A. No, sir.

"Q. It was your car, wasn't it? A. Not that I know of.

"Q. It was your stepson's car, wasn't it? A. I don't think so. His car was home I am pretty positive, that night."

The defendant also denied the conversation with Mr. Thoroughman, although he said that he and Mr. Thoroughman were joking with each other on the way to the county jail.

After the defendant rested, Mr. Thoroughman was recalled and testified that he made a memorandum of the motor number on the Ford coupé, and that he was not sure of the number because his memorandum was blurred, but that it appeared to be 12653599.

Mr. Rhodes, chief clerk of the Oklahoma state highway department, was then called by the government, and he testified that he had searched the records of his department, showing cars which were registered by H. M. Saxton in the year 1927; that he found one car, which was a Ford coupé with motor number 12,654,599; that the application for license appeared to be signed by H. M. Sax-

ton, and was dated the 27th day of January, 1927; that the certificate of title to this car was originally issued to the Sanders System on the 11th day of August, 1925, and was transferred to Fred Jones on the 15th day of March, 1927, and on the 29th day of June, 1927, was transferred to the defendant. The witness testified that sometimes licenses were issued for cars and that owners sold the cars without filing a transfer of title, and in that case no notice of transfer would appear upon the records; in other words, that a car might be registered in the name of one man, whereas it was actually owned by another, who had not filed the necessary documents to secure the transfer of record. After the clerk had testified, Mr. Thoroughman again testified that he made a record of the 1927 license number of the car; that there was one figure on his memorandum so blurred that he could not be positive about it. He was asked:

"Q. Are you positive you took off the correct motor number? A. No, sir, I am not. I notice in the reading of the number by the clerk I think he had a four where I had three in the middle of this number. There was just that one difference."

The defendant, upon being recalled, testified as to his ownership of a number of other cars during the year 1927, and was asked this question:

"Q. Now, there was evidence brought out on behalf of the Government that this Ford coupé which was seized by the officers on the evening of May 16th was registered in your name. Do you know whether or not that is true or not? A. I couldn't say.

"Q. You saw the Government exhibit, application for automobile license, did you not, that was introduced in evidence? A. Yes, sir.

"Q. Examine that, Government's Exhibit 1 and state what it is, if you know. Is that your signature there? A. Yes, sir.

"Q. So 'you did make application for a license on the car therein described, did you not? A. Yes, sir, I guess I did. That is my signature.

"Q. Do you now recall the car? A. No, I don't. I asked several times from the Pro-hibition Department to see the car that they claimed I owned, and they refused the request and I didn't know today when Mr. Thoroughman told me it was on West Second Street and I had been refused that right all the way through.

"Q. So you don't know whether you ever owned that particular car or not? A. No, sir, but that is my signature here."

Taking into consideration the testimony of the police officer as to what he saw and what he did on the evening of May 16th, the admission of the defendant to Mr. Thoroughman, and the testimony relative to the records, given by the chief clerk of the Oklahoma highway department, as well as the admission of the defendant that he had made application for the license in January, 1927, for the Ford coupé in question, and the doubtful character of his own evidence, we think that the questions as to whether the coupé which contained the liquor on the evening of May 16th and the liquor itself were in the possession and control of the defendant, and whether he at that time transported the liquor as charged, were questions of fact for the jury, and that the court did not err in refusing to direct a verdict for the defendant at the close of the testimony. The jury might have believed the defendant and found that he had nothing to do with the car or the whisky, or it might have found as it did. There are slight discrepancies in the testimony of the government witnesses. The witness Heep referred to the car as a Ford roadster, but the record shows that he turned the car over to the federal officers and that it was in fact a Ford coupé. We think there is nothing to justify a reversal of the judgment.

Complaint is made as to the charge of the court and the failure to give certain requested instructions. We find no merit in it. ■ Our attention is also called to an alleged prejudicial statement made by the attorney for the government; but such statement is no part of the record and cannot be considered by us. If made, it is not of such an objectionable character as to justify a reversal.

The judgment is affirmed.