Pappas v. State.

PETER PAPPAS *v.* THE STATE.

(*Jackson.*   April Term, 1916.)

1. SALES. Conditional sales. Recovery of property. Failure to resell. Effect.

Where the seller of goods on conditional sale retook the goods, title to which was retained in him after they were removed from the State, his failure to resell them, as required by the conditional sales law, canceled the debt against the original purchaser. (*Post, pp.* 500, 501.)

2. SALES. Conditional sales. Criminal responsibility for transfers. Statutes. Construction. "Knowingly or willfully."

Laws 1909, ch. 557, sec. 1, making it unlawful to remove from the State any personalty, title to which was retained at time of sale, unless written consent of the seller is obtained, having omitted the words "knowingly" or "willfully," does not require intent to defraud as an element of the offense, but the bare removal, even if in good faith, constitutes the offense. (*Post, pp.* 501-508.)

Acts cited and construed:   Acts 1909, ch. 557.

Cases cited and approved:   Debardelaben v. State, 99 Tenn., 649; Duncan v. State, 26 Tenn., 148; Haggerty v. St. L. Ice Mfg. Co., 143 Mo. 238; State v. Foster, 22 R. I., 163.

Case cited and distinguished:   Halsted v. State, 41 N. J. Law, 552.

---

FROM SHELBY

---

Appeal from the Criminal Court of Shelby County. —JESSE EDINGTON, Judge.

FRIEDMAN & ROSENSTEIN, for appellant.

WM. H. SWIGGART, JR., Assistant Attorney-General
for the State.

MR. GHOLSEN, Special Judge, delivered the opinion
of the Court.

The plaintiff in error, hereinafter called the defend-
ant, was convicted of removing beyond the limits of
the State of Tennessee personal property, the title to
which had been retained in another at the time of his
purchase thereof, without the consent of the seller of
said personal property in writing. He has appealed
and assigned errors.

It is shown that the property described in the indict-
ment was purchased by the defendant by a written con-
tract of conditional sale, which expressly prohibited the
defendant from removing the property from the State,
without the written consent of the seller, and that not-
withstanding the statute, and notwithstanding the con-
tract, the defendant did carry the property to the State
of Arkansas, where it was recovered and brought back
by the agents of the seller. The defendant testified
that he was a Greek, could read and understand but
little English, and that he did not know that he had no
right to carry the property to Arkansas. The reason
given by him for going, and carrying said property out
of the State, was that he could do no business in Mem-
phis, and he claimed that it was his purpose to remit
from Arkansas, and meet the unpaid installments on

the property purchased by him as they fell due.  The property was recovered before any default in payment had been made, the seller having learned of the defendant's departure from the State before another payment was due.  Upon recovery of the property by the seller, it was not sold as required by the conditional sales law, and therefore, he has no further debt against the defendant.

It is contended by the learned counsel for the defendant that the trial judge was in error in instructing the jury that if the defendant bought the property described in the indictment under a conditional bill of sale, and left this State and went to Arkansas with the property, without the written consent of the seller, he would be guilty as charged in the indictment.  The further contention is made that the trial judge was in error in refusing a request by the defendant that the jury must find that the defendant removed the property from this State with the intent to defraud the seller, and that if they should have a reasonable doubt of the existence of fraudulent intention on the part of the defendant in removing the property to Arkansas, the jury must acquit him.

The first section of chapter 557 of the Acts of 1909, under which defendant was convicted, is as follows:

"Sec. 1. Be it enacted by the General assembly of the State of Tennessee, that it shall be unlawful for any person to remove beyond the limits of  .   .   . Tennessee any personal property, the title to which has been retained at the time of the sale thereof, unless the

consent of the seller of such article be obtained in writing prior to the time that such removal of such article is made beyond the limits of the State of Tennessee. Any person violating this section shall be deemed guilty of a felony, and, upon conviction thereof, shall be imprisoned for not less than one year nor more than five years, and fined not less than two hundred and fifty dollars ($250) nor more than five hundred dollars ($500)."

There is no evidence in the record showing that said property was removed from this State with the intent upon the part of the defendant to defraud the seller, and the question is squarely presented whether it was necessary for the State to show such fraudulent intent upon the part of the defendant.

The legislature may enact laws for the mere violation of which, irrespective of the criminal intent, penalties are attached; as, for selling liquor to minors, selling adulterated food and drugs, allowing minors to frequent saloons, changing and obstructing public roads, maintaining a nuisance, and disposing of mortgaged property. 8 Am. & Eng. Enc. Law (2d Ed.), 291, and authorities cited.

"As a general rule where an act is prohibited, and made punishable by statute, the statute is to be construed in the light of the common law, and the existence of a criminal intent is essential. The legislature, however, may forbid the doing of an act and make its commission criminal without regard to the intent of the doer, and if such an intention appears, the court must

give it effect, although the intention may have been innocent. Whether or not in the given case a statute is to be so construed is to be determined by the court, by considering the subject-matter of the prohibition as well as the language of the statute, and thus ascertaining the intention of the legislature." 12 Cyc., 148.

Among other authorities there cited are *Debardelaben* v. *State,* 99 Tenn., 649, 42 S. W., 684, and *Duncan* v. *State,* 7 Hump., 148.

It is the general rule of construction that when a statute makes criminal an act not *malum in se,* or infamous, without requiring the act to be knowingly or willfully done, a criminal or fraudulent intent is not an element of the offense, and need not be proved. Ruling Case Law, vol. 8, title, Criminal Law, sec. 12; *Halsted* v. *State,* 41 N. J. Law, 552, 32 Am. Rep., 247; *Haggerty* v. *St. L. Ice Mfg. Co.,* 143 Mo., 238, 44 S. W., 1114, 40 L. R. A., 151, 65 Am. St. Rep., 647; *State* v. *Foster* 22 R. I., 163, 46 Atl., 833, 50 L. R. A., 339; note, vol. 11 L. R. A., 807.

The rule and the reason thereof is well stated in Ruling Case Law, supra, as follows:

"Guilty Intent as Element of Statutory Crime. The maxim, '*Actus non facit reum nisi mens sit rea,*' does not always apply to crimes created by statute, and therefore if a criminal intent is not an essential element of a statutory crime, it is not necessary to prove any intent in order to justify a conviction. Whether a criminal intent or guilty knowledge is a necessary ele-

ment of a statutory offense is a matter of construction to be determined from the language of the statute, in view of its manifest purpose and design. There are many instances in recent times where the legislature in the exercise of the police power, has prohibited, under the penalty, the performance of a specific act. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. The only fact to be determined in these cases is whether the defendant did the act. In the interest of the public the burden is placed upon the actor of ascertaining at his peril whether his deed is within the prohibition of any criminal statute. It is equally true that in some cases, when the prohibition in a statute against doing a certain act or series of acts is couched in general terms, courts have imported into the statute a proviso that the denoted act shall be done from a guilty mind. These two classes of cases, diverging as they do and seemingly standing apart from each other, may at first view appear to be irreconcilable in point of principle; nevertheless such is not the case. They all rest upon one common ground, and that ground is the legal rules of statutory construction. Each set of cases is or should have been the result of the judicial ascertainment of the mind of the legislature in the given instance.'' Ruling Case Law, vol. 8, title, Criminal Law, sec. 12, pp. 62-3.

The case of *Halsted* v. *State,* supra, contains an able discussion of the subject by the supreme court of New Jersey, and from that we make the following quotations:

"Nothing in law is more incontestable than that, with respect to statutory offenses, the maxim that crime procees only from a criminal mind does not universally apply. The cases are almost without number that vouch for this. The defendant in this case pleads that he was ignorant of the law as applied to the facts involved in his conduct. But it has been many times decided, and indeed is the admitted general rule, that ignorance of the law is no defense against a criminal charge. . . .

"A man" as remarked by Earle, C. J., "cannot be said to be guilty of a *delicti* unless, to some extent, his mind goes with the act. And the first observation which suggests itself in limitation of the principle thus enunciated is that whenever the law positively forbids a thing to be done, it becomes thereupon *ipso facto* illegal to do it willfully, or in some cases, even ignorantly, or, maybe, to effect an ulterior laudable object; and consequently the doing of it may form the subject-matter of an indictment, or other legal proceeding *simpliciter,* and without the addition of any corrupt motive."

"As there is an undoubted competency in the lawmaker to declare an act criminal, irrespective of the knowledge or motive of the doer of such act, there can be, of necessity, no judicial authority having the power

to require, in the enforcement of the law, such knowledge or motive to be shown. In such instances the entire function of the court is to find out the intention of the legislature, and to enforce the law in absolute conformity to such intention. And in looking over the decided cases on the subject it will be found that in the considered adjudications, this inquiry has been the judicial guide."

It being clear that in statutory offenses a criminal intent or fraudulent intent is not always essential, it is equally clear that whether the scienter is a material element of the crime or not must be determined by the language used by the legislature in defining the offense.

In the statute under consideration the words "willfully" or knowingly" are nowhere to be found. These are the usual words used by the lawmaking power when it is contemplated by them that the intention of the person violating the statute should be considered as a material element. A holding that there must be a fraudulent intent in this offense would be to render nugatory several important clauses in the statute. The statute not only stipulates that the consent of the owner be obtained in writing, but also that it must be obtained prior to the time of the removal. Neither of these provisions would be effective if it were necessary to show a fraudulent intent on the part of the accused in order to convict him, when it was shown that he had taken the property in question from the State without the consent of the seller or holder of the legal title.

It is evident that it was the purpose of the legislature, not only to protect the conditional vendor from ultimate loss of the property sold on a conditional sale, but to secure to him a knowledge of the whereabouts of the property, so that if default be made in any payment, he would be enabled to readily regain possession of the property and enforce his legal rights.   It is apparent that he would be greatly hampered if it were necessary for him to search the United States for his property, and that there was a logical and reasonable end to be secured by the enactment that such property should not be removed without the written consent of the seller of the property, first had and obtained.   It would defeat the ends of the statute to construe it as contended by learned attorneys for the defendant.

The laws of our State have long recognized the validity of conditional sales, where, in many instances, the principle, if not the only security to the vendor, is the retention of title  to the property  sold.   Much valuable property has been thus dealt with, such as live stock, farm implements, machinery, vehicles, furniture, etc.   It is an easy and cheap method of doing business, and in many places it has grown to large proportions. Much of the property thus transferred can be easily and quickly removed to other States, especially as Tennessee is a long narrow State bounded by eight other States, in which there may be no protection whatever, under the laws of such States, for the rights of conditional vendors.   Evidently these conditions were considered by the legislature when this act was passed. No

sound reason has been given why it should not be enforced. The judgment is therefore affirmed.

But we do not mean to hold that the mere carrying of such property out of the State, temporarily, or incidentally in the ordinary, and contemplated use of it, by the conditional purchaser, without any purpose of permanently removing it beyond the limits of Tennessee, would constitute an offense under this statute.

However, it appearing that the defendant has been imprisoned several months already; that he had paid all installments that fell due before the property was removed; that the seller has recovered the property and no longer has any claim against the defendant; that the latter was ignorant and probably intended no wrong—we recommend that the Governor pardon him, as we believe he has already been punished enough.

In the foregoing opinion we have quoted liberally from the able brief of the learned assistant attorney general, and feel that due credit should be given.