T. S. HUNTER *v*. THE STATE.

(*Knoxville.* September Term, 1928.)

Opinion filed December 8, 1928.

CARLYLE S. LITTLETON, for plaintiff in error.

L. D. SMITH, Attorney-General and SHEPHERD, CARDEN & CURREY, for the State.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This appeal is from a conviction of embezzlement by a public officer, under Section 6574, Shannon's Code. Hunter was Trustee of Hamilton County and he failed to account for $31,239.48 of public funds. His defense is and was that he acted in appropriating to his own use these funds under the belief, supported by the advice of counsel, that chapter 101 of the Acts of 1921, passed prior to his election, and in effect during his term, known as the Salary Law, was unconstitutional, leaving in force the former law which vested all fees of the office in the Trus-

tee. The insistence for Hunter is that criminal intent is an essential element of the crime under the statute, that the failure and refusal to pay over these public funds creates a rebuttable, as distinguished from a conclusive presumption of criminal intent, and that, therefore, testimony tending to show the good faith belief of the defendant, based on the advice of counsel, that the Act of 1921 was unconstitutional, was competent as tending to rebut criminal intent. Complaint is particularly directed to the refusal of the trial Judge to admit such testimony, and of that portion of the charge which expressly excluded from the consideration of the jury this theory of the defense.

*(1)* Indeed, the case here turns upon the challenged correctness of the following excerpt from the charge:

"Now, gentlemen of the jury, lest you be misled by some things that have been said by counsel at the bar and some of the testimony that you may have heard, and, while ruled out by the Court, still might serve to confuse you, I charge you as a matter of law that it would be no defense for the defendant to say that he believed in good faith that the law under which he was acting was unconstitutional, unless he relied upon an express decision of the highest court in the State; nor would it avail him that he acted in good faith in violating the law and that he acted upon advice of counsel."

In effect, the sole question for consideration is whether or not belief in the unconstitutionality of an act of the legislature, supported by the advice of counsel, is competent to rebut such proof of criminal intent, if any, as is essential under the embezzlement statute to a conviction of a public officer who has converted and appropriated public funds to his personal use.

*(2)* While recognizing that the embezzlement statute applicable to public officers contains no express language

declaring a criminal intent essential, and significantly omits the word "fraudulently," which is employed in the section immediately following relating to embezzlement from a private corporation, learned and diligent counsel insist that, since the statute does not expressly or by fair construction negative the requirement of criminal intent, it is to be construed in the light of the common law which recognized such intent as essential. Language from the opinion in *Pappas* v. *State,* 135 Tenn., 502, is relied on, and other authorities.

(3) Embezzlement is a statutory offense. It is clearly within the power of the legislature to make it a crime to do a certain thing without reference to or requirement of proof of intent. An illustration is afforded by the case cited of *Pappas* v. *State, supra.* In that case, as said by counsel, the defendant admitted his intention to do the act denounced, that is, to remove the property which had been conditionally sold from the State, and this Court held that allegation or proof of a criminal or fraudulent intent was unessential. So here the defendant has admitted his intention to do the act denounced, that is, appropriate to his own use public funds in his charge, and in this case, as in that, proof of criminal intent is unnecessary.

(4) Counsel say that, "here plaintiff in error sought to show that it was never his intention to commit the act denounced by the statute creating the crime, to-wit; to convert the property of another as distinguished from his own property." The suggested distinction is not apparent. It rests on a misconception. It was clearly the intention of Hunter to commit the very act denounced, that is, to appropriate to his own use the public funds. Illustrations suggested of robbery or fire and the like

are not in point. In such cases the accused custodians of the funds do not appropriate to their own use the funds, either intentionally or otherwise. Such an explanation would be competent and would if shown operate to relieve the accused of guilt. This is all that can be deduced from the expressions relied on from *State* v. *Leonard,* 6 Cold., 309, and *State* v. *Cameron,* 50 Tenn. (3 Heisk), 85. Such proof would go to disprove the act denounced, the misappropriation of the funds.

(5) The distinction above noted between the language of the two embezzlement acts, passed in 1839-40 and 1843-44, respectively, is emphasized by the fact that in the public funds act, first passed, express provision was made for relief of the defaulting officer, who may have brought himself under the act by inadvertence, or under circumstances beyond his control, without deliberate or guilty intention, upon the payment over of the funds. Since the act embodies no requirement of criminal intent, a way of escape is provided for him whose will and intent is not criminal. The private corporation act contains no such saving provision, but on the other hand, for the protection of the accused expressly requires that it be shown that he *fraudulently* converted the funds. So that, conceding that proof of intent is required in prosecution for embezzlement under this statute, it appears that the intent required is an intent only to do the thing denounced in the statute, that is, appropriate to his own use the public funds.

(6) And, if it should be conceded as contended that a fraudulent intention is requisite, and that such intent is subject to rebuttal, we cannot subscribe to the proposition that such rebuttal can be competently evidenced and established by testimony that the accused—who, with

full knowledge of the law and a clear understanding of its provisions respecting his rights in and to the funds, deliberately violating it—acted in the belief, however honestly entertained, and however supported by the opinion of counsel, that it was unconstitutional.

(7) Even the highest courts of the land recognize the solemnity and *prima-facie* validity of legislative enactments, and hesitate always to pronounce them unconstitutional. Every presumption is indulged in favor of their validity. Certainly, no theory is to be favorably considered which recognizes in public officers the right to determine in their own interest that an act passed for their control is invalid. If those individuals affected by laws are to be conceded the right to disregard and nullify them whenever they believe them to be unconstitutional, or are so advised, anarchy would ensue. The drunken driver, for example, would proceed on his way and meet prosecution with the answer that he had no criminal intent, because he believed and was advised that the act was unconstitutional.

The following statement from 16 C. J. Crim. Law, sec. 52, is supported by many decisions: "It is no defense for the accused to show that he believed in good faith that the law which he violated was unconstitutional, except where he has relied on the express decision of the highest court in his State. Nor will it avail the accused that he acted in good faith under the advice of counsel." And 8 R. C. L. Crim. Law, sec. 95, is to the same effect, reading, "The fact that a person honestly believes that he has a right to do what the law declares to be illegal will not affect the criminality of the act. The advice of counsel furnishes no excuse to a person for violating the law, and cannot be relied upon as a defense in a criminal action."

Cases relied on by counsel to the contrary are not, we think, in point. For example, while in *Williamson* v. *U. S.*, 207 U. S., 425, 453, the Court approved instructions by the trial court allowing the accused the benefit of a showing of good faith on advice of counsel to rebut "wilful and unlawful intent," that was a case of construction of an involved and complicated statute as to the scope and meaning of which there was doubt. No question of constitutionality was involved; and it is significant that the instruction approved by the Supreme Court concluded with these words: "But, on the other hand, no man can wilfully and knowingly violate the law, and excuse himself by pleading that he followed the advice of counsel." Hunter wilfully and knowingly violated the law, but says that he did not recognize it as, or believe it to be the law, because he was advised that it was unconstitutional. No case examined justifies a violation of a law on the ground that the accused believed and was advised by counsel that it was unconstitutional. As before suggested, such a holding would be productive of disastrous results, opening a way of escape from prosecution for the criminally inclined through a door held ajar by ignorant, biased, or purchasable advisers.

So the case of *Cutter* v. *State*, 36 N. J. L., 125, relied on by counsel, is authority only for the proposition, as digested in 16 C. J., p. 85, that "where the law is not settled, or is obscure, the defense may be relied on that the accused acted in good faith under the advice of counsel." No attempt was made in that case to defend on the ground that defendant acted on his belief that the law was unconstitutional.

Nor is the case of *Lindgren* v. *U. S.*, 260 Fed., 772, quoted from at length in the brief, controlling here. In

the first place, in that case the indictment expressly charged that the defendant "did then and there wilfully, unlawfully, and feloniously embezzle and fraudulently convert to his own use the aforesaid sum of money, with the unlawful, felonious, and fraudulent intention to then and there deprive the aforesaid E. M. Keyes," etc. It is to be assumed that the charge followed the statute. Quite obviously it became essential to prove felonious intent. Moreover, the opinion discloses that the fund involved was in dispute among the parties. The legal effect of certain leasehold transactions was involved. The attempt of the defendant was to show a good faith belief in his right under the facts to retain the funds in his possession and that he acted on the advice of counsel. The Court held that this proof should have been allowed to go to the jury in rebuttal of the charge of a felonious intent. But here, again, no reliance was had on a claim of unconstitutionality of a law.

*Duncan* v. *State*, 7 Humph., 148, is quoted for the statement that "To hold that a man shall be held criminally responsible for an offense of the commission of which he was ignorant at the time, would be intolerable cruelty." In that case the defendant had not pled, either that he was ignorant of the law, or that he acted in denial of its constitutionality. The statute invoked made it a criminal offense for the commander of a steamboat to convey away a slave, except under given conditions. The Court held that if the slave was carried off in the boat without the knowledge or consent of the defendant, he could not be held guilty. This was a case of ignorance of fact, not of law.

Turning to *McGuire* v. *State,* on page 54 of the same volume (7 Humph.), we find this distinction is clearly

set forth. The prosecution was under an act to suppress illegal voting, providing for the conviction of any person who *knowingly* voted, not being at the time a qualified voter. The Court refused to approve a charge that "if the defendant believed himself to be a qualified voter, and entitled to vote, although not entitled by law to vote, he could not be convicted;" saying that "in general it is a maxim especially applicable to criminal proceedings that ignorance of the law constitutes no valid ground of justification or excuse. A little reflection will teach any one that, if this maxim were not applied and enforced as to the body of criminal offenses, no community could be held together in peace and security, for evil doers would have an open door for their escape." And illustrating the essential distinction the Court says:

"If the voter believes himself to be twenty-one years of age, when he is not, and vote, he does not know the existence of the disqualifying fact, and may, on that ground, be excused. But if he know that he is only twenty years of age, yet believes he is old enough, in point of law, to vote, such ignorance of the law will not excuse him. If the voter honestly believe that he has resided six months in the county before the election, and the fact turn out otherwise, he may be excused. But if he know that he has been only four months in the county before the election, yet he believes that to reside four months is, in point of law, residence enough, he shall not be excused. If a voter believe that he was born in the United States, and it turns out that he was born in a foreign country, he may be excused. But if he knows he is a foreigner, and has not taken the oath of allegiance to the United States, but has only made his declaration of renunciation, etc., and thinks the latter, in point of

law, sufficient to entitle him to vote, this ignorance of the law shall not excuse him; for he voted knowing a state of facts to exist which, in point of law, disqualified him."

(8) The authorities uniformly recognize and give effect to this distinction between mistakes of fact and ignorance of the law, sometimes excusing the accused in the first case, but refusing always to do so in the latter. The claim of belief in the unconstitutionality of a law comes, of course, within the latter class. It is a plea of ignorance of the law, which is never admissible to excuse crime. *Reynolds* v. *U. S.*, 98 U. S., 145; *U. S.* v. *The Ambrose Light*, 25 Fed., 408; *U. S.* v. *Baldridge*, 11 Fed., 552; and *State* v. *Foster*, 25 R. I., 163, 50 L. R. A., 339.

(9) In the last case it is said, citing Bishop, New Crim. Law, par. 294, and *Hoover* v. *State*, 59 Ala., 60, and other authorities, that "ignorance of the law will not excuse its violation, even when one endeavors to ascertain the law and is misled by the advice of counsel," although it is sometimes said that a mistake as to the effect and application of a law may serve to mitigate the punishment.

In the noted case of *U. S.* v. *Anthony*, 24 Fed. Cases, p. 829, No. 14,459, in which Susan B. Anthony was convicted of voting illegally, the U. S. Circuit Court for the Northern District of New York affirming the judgment rejected the insistence of the defendant that the State constitution, which denied to her the right to vote, contravened the Federal Constitution and was therefore void, and held that she could not, when prosecuted, defend on the ground of her belief in the unconstitutionality of the State law. Said the Court, "Miss Anthony knew that she was a woman, and the constitution of this State prohibits her from voting. She intended to violate that provision—intended to test it, perhaps, but,

certainly, intended to violate it. . . . There was no ignorance of any fact. . . . She takes the risk, and she cannot escape the consequences. It is said, and authorities are cited to sustain the position, that there can be no crime unless there is a culpable intent, and that, to render one criminally responsible a vicious will must be present. . . . To constitute a crime, it is true that there must be a criminal intent, but it is equally true that knowledge of the facts of the case is always held to supply this intent. . . . No system of criminal jurisprudence can be sustained upon any other principle.'' This language might readily be paraphrased and made to fit the case before us. It enunciates the rule and draws the distinction here applicable. Moreover, we have here a case not so much of ignorance of the law, either as to existence or interpretation, as of conscious and purposeful repudiation of its authority. The plaintiff in error, committed by his obligation of office to its observance, has challenged the power of the General Assembly to enact it, and had usurped the exclusive prerogative of the Courts to adjudge its invalidity. This no man may do with impunity.

It results that we find no error and the judgment is affirmed.