SLOAN *v.* STATE.

(*Nashville,* December Term, 1934.)

Opinion filed February 23, 1935.

574

James W. Rutherford, of Nashville, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for the State.

Mr. Special Justice Ed. J. Smith delivered the opinion of the Court.

Sloan was convicted on the charge that, by falsely impersonating another, he received an automobile under a rental contract. From a judgment imposing a sentence of not less than three years in the penitentiary, he has appealed in error.

At about 10 o'clock on the night of August 3, 1934, Sloan went to the place of business of Matthews Company, which was a concern engaged in renting automobiles, and located at Nashville, Tenn. He said to Sanders, an employee of the company, and in charge of its business at the time, that he wished to rent an automobile, stating that his name was J. B. King, that he was employed by the Rock City Construction Company, was twenty-two years of age, and lived at Goodlettsville, Tenn. He also gave Sanders references at Goodlettsville, and, after calling up one of them, Sanders had Sloan sign a printed form of a rental contract, one of the terms of which was that the car should not be taken out of the state of Tennessee. This contract was not read by Sloan, as he was not requested to read it by Sanders.

After making a deposit of $8, Sloan obtained the car for the purpose, as he states, of taking a young lady out riding, but finding that she was ill, he went to Goodlettsville, and in company with a young man, named Russell, proceeded to Glasgow, Ky., for the purpose of visiting his aunt, Mrs. Harper, who, he states, was ill. At about 7 o'clock on August 4, 1934, while Sloan and Russell were waiting at a gasoline station to meet a mutual friend, named Settle, the chief of police at Glasgow, noticing the car in front of the station, questioned its occupants as to how they had obtained it.

A few hours later, Murray, a member of the Nashville police force, arrested Sloan on the charge that while at Glasgow he had attempted either to sell or to swap the rented automobile. Murray testified that Sloan admitted to him on two occasions on the return trip to Nashville that such was his intention. Sloan and his compan-

ion, Russell, denied that any such admission had been made by Sloan, and, while admitting that he did give to Sanders the name of J. B. King when he rented the car, he states that he did so solely for the reason that as he was but eighteen years of age, he believed that he could not obtain the car under a rental contract unless he was twenty-one years of age, and that he never entertained at the time he rented the car any intent fraudulently to deprive the owner of it.

J. B. King, who was a real and not a fictitious person, was twenty-two years of age, worked for the Rock City Construction Company, and lived at Goodlettsville, Tenn. The presentment charged that Sloan unlawfully, falsely, fraudulently, and feloniously obtained possession of the car, and under this charge, and on the proof introduced by the state, Sloan was convicted and sentenced.

The determinative question in the case is whether intent to defraud is an essential element of the offense of false personation. This question is presented directly, for the first time, for decision by this court.

Code 1932, sec. 10951, reads as follows: "Any person who falsely impersonates another, and, in such assumed character, receives any property of any description, intended to be delivered to the person so personated, shall, on conviction, be punished as if he had stolen the property."

This section of the Code of 1932 defines the offense of false personation exactly, and without amendment, as it is defined by section 4703 of the Code of 1858.

Section 4703 of the Code of 1858, as well as sections 4701, 4702, 4704, and 4705 are codifications of sections 1, 2, and 3 of chapter 48 of the Acts of 1841-42 which sections read as follows:

"Sec. 1. Be it enacted by the General Assembly of the State of Tennessee, That whoever shall feloniously obtain, or get into possession the personal goods or choses in action of another, by means of any false and fraudulent pretences, shall be guilty of felony, and shall undergo confinement in the public Jail and Penitentiary house established in this state, for a period of not less than three, nor more than ten years.

"Sec. 2. Be it enacted, That whoever shall fraudulently receive the personal goods or choses in action of another, knowing that the same shall have been feloniously obtained, or got into possession by means of any false and fraudulent pretences as aforesaid, with intent to deprive the true owner thereof, shall be deemed guilty of felony, and shall undergo confinement in the public Jail and Penitentiary house established in the state, for a period not less than three nor more than ten years.

"Sec. 3. Be it enacted, That the words 'personal goods' in the two preceding sections of this act, shall include money and all other personal property; and the words 'choses in action' include bills, bonds, notes and every kind of negotiable or assignable instruments; the words 'false and fraudulent pretences' include all cases of pretended buying, borrowing and hireing, and all other cases of bailment where the buyor or bailee intended at the time he received the goods, feloniously to steal the same. These words also include all cases where a person feloniously gets the money or goods or choses in action of another into possession by any false token or counterfeit letter, or by falsely personating another, or by falsely pretending to be the owner of such goods or choses in action, or by any other false and fraudulent pretense, where the party obtaining or getting the goods

or choses in action into possession, intended at the time feloniously to steal the same; and in all cases coming under the provisions of the first and second sections of this act, where the value of the goods or choses in action, which shall have been feloniously obtained or received, shall not exceed the value of ten dollars, it shall be lawful for the court, on the recommendation of the jury, to release the penalty imposed by this act.''

It will be observed that by section 3 the words ''false and fraudulent pretenses'' are defined as including all cases where a person feloniously gets the money or goods or choses of another into possession by false token, or counterfeit letter, or by falsely impersonating another, or by falsely pretending to be the owner of such goods or choses in action, or by any other false and fraudulent pretense.

It is clear that, as defined by section 3, ''falsely impersonating another'' was classed as one of four methods by which the offense of obtaining property by means of false and fraudulent pretenses might be committed.

In other words, prior to the Code of 1858, and as defined by section 3, chapter 48, Acts of 1841-42, an intent to defraud was an essential element of the offense of obtaining property by false personation.

Section 4703, Code 1858, reads as follows: ''Any person who falsely personates another, and in such assumed character receives any property of any description, intended to be delivered to the person so personated, shall, on conviction, be punished as if he had stolen the property.''

The codifiers of the Code of 1858, however, detached two other modes specified by section 3, that is ''any false token'' or ''counterfeit letter,'' and transposed them to

section 4701 so that section 4701, as codified, reads as follows: "Every person who, by any false pretence, or by any false token, or counterfeit letter, with intent to defraud another, obtains from any person any personal property on the signature of any person to any written instrument, the false making of which is forgery, shall, on conviction, be imprisoned in the penitentiary not less than three nor more than ten years."

It is significant that "falsely personating another" used in section 3 as one specified mode of obtaining property by false pretenses was not embodied in section 4701 with two other modes specified by section 3, with which it had formerly been collocated, and that while two of such modes, that is, the use of any "false token" or "counterfeit letter," were embodied in section 4701, and an intent to defraud was required if either of these modes was used to obtain property by false pretenses, "falsely impersonating another" was detached and embodied in section 4703, without an intent to defraud being made a necessary element of the offense.

Such a transposition was authorized by the act creating the commission to prepare the Code of 1858, as it authorized the commissioners not only to amend or omit existing statutes, but to insert new provisions with the same effect as if they had been enacted by the Legislature.

The Code of 1858, the work of Judge WILLIAM F. COOPER and HON. R. J. MEIGS, two of the most eminent lawyers in the history of Tennessee, has long been noted for its accuracy, clearness, and precision. To argue that the codifiers, through inattention or negligence, failed, in defining "false personation," to require an intent to defraud as a necessary element of the crime, and to in-

sist that section 4703 should be read *in pari materia* with section 4701, is a challenge to their accuracy of expression and painstaking attention to detail. That the transposition was deliberate and intentional admits of no reasonable doubt.

■ As section 10951, Code 1932, is a duplication of section 4703, Code of 1858, the court is of the opinion that an intent to defraud is not an essential element of the crime of false personation as defined by that section.

■ While the question of what is the proper construction of a particular statute must, as a general rule, be determined by ascertaining the intention of the Legislature in enacting such a statute, and resort to decided cases is of little or no value, nevertheless, the decision of this court in *Hunter* v. *State,* 158 Tenn., 63, 12 S. W. (2d), 361, 61 A. L. R., 1148, furnishes a strong analogy in support of the conclusion above announced as to the proper construction of section 10951.

Hunter appealed from a judgment of conviction on the charge of embezzling public funds intrusted to him in his official capacity. He insisted that as he appropriated the funds without a fraudulent intent, the judgment could not be sustained in that such an intent was a necessary element as defined by section 6574, Shannon's Code, section 10957, Code 1932.

In overruling this contention, MR. JUSTICE CHAMBLISS said:

"While recognizing that the embezzlement statute applicable to public officers contains no express language declaring a criminal intent essential, and significantly omits the word 'fraudulently,' which is employed in the section immediately following relating to embezzlement from a private corporation, . . . learned and dili-

gent counsel insist that, since the statute does not expressly or by fair construction negative the requirement of criminal intent, it is to be construed in the light of the common law which recognized such intent as essential. Language from the opinion in *Pappas* v. *State,* 135 Tenn., [499] 502, 188 S. W., 52, is relied on, and other authorities.

"Embezzlement is a statutory offense. It is clearly within the power of the Legislature to make it a crime to do a certain thing without reference to or requirement of proof of intent. An illustration is afforded by the case cited of *Pappas* v. *State, supra.* In that case, as said by counsel, the defendant admitted his intention to do the act denounced; that is, to remove the property which had been conditionally sold from the state, and this court held that allegation or proof of a criminal or fraudulent intent was unessential. So here the defendant has admitted his intention to do the act denounced; that is, appropriate to his own use public funds in his charge, and in this case, as in that, proof of criminal intent is unnecessary." Page 66 of 158 Tenn., 12 S. W. (2d), 361.

In view of the conclusion reached by the court as to the correct construction of section 10951, the assignments of error, challenging the sufficiency of the evidence to sustain the conviction, are without merit, and are overruled.

■ It is also assigned as error that Sloan was convicted of obtaining the automobile under the rental contract by false personation on a presentment charging him with obtaining property by false pretenses. This is a mistaken view, as the first count of the presentment on which he was convicted is based on the charge that

he obtained the car by falsely personating J. B. King. The second count, based on the charge that he obtained the car by false pretenses, was withdrawn by the court below from the jury.

■ The assignment that the state failed to prove the venue and *corpus delicti* must be overruled, as the offense was committed in Nashville when Sloan obtained the car under a rental contract from Matthews Company by falsely impersonating J. B. King.

■ ■ The last error assigned is to the effect that the court below allowed the assistant prosecuting attorney, in his cross-examination of character witnesses offered by Sloan, to ask them if they knew Sloan had forged the name of another to a rental contract, and had obtained the car with the intent to sell or swap it, would they still give him full faith and credit on his oath in a court of justice. An exception in a general form was made by the defendant to this question, and was overruled by the court. The record shows that each of the character witnesses testified that if they believed what was stated in the question of the assistant prosecuting attorney, they would not believe Sloan under oath, but they did not believe it. While this mode of cross-examination should not have been allowed by the court below, in that the question called for an expression of opinion of the character witnesses as to the guilt or innocence of Sloan on the charge for which he was being tried, nevertheless as it has been held that the count of the presentment on which he was convicted did not require an intent to defraud on his part, such a method of cross-examination, while reprehensible, is not such error as to justify a reversal of the case.

While the judgment must be affirmed, the court, be-

ing of the opinion that the punishment is too severe, recommends that the sentence of not less than three years' imprisonment in the penitentiary be commuted by the Governor to thirty days in the workhouse of Davidson county, and costs.