Commonwealth v. Hargreaves

Raymond V. John, for Commonwealth.

Thomas D. McBride, for defendant.

LEVINTHAL, J., April 12, 1944.—On February 10, 1944, defendant Wesley Hargreaves was called to trial before me on an indictment charging him with obstructing justice by refusing to testify in a certain criminal case which was pending before a magistrate. Defendant pleaded not guilty and waived his right to a jury trial.

The facts established are as follows:

1. Wesley Hargreaves, this defendant, was an employe of the City of Philadelphia in one of the local or branch tax offices. An audit of the accounts of that office indicated that there was a shortage of moneys paid into that office by taxpayers, and Wesley Hargreaves was arrested and charged with the embezzlement of these funds. He was subsequently indicted and charged with larceny by clerk, with feloniously omitting to make entries, and with conspiracy.

2. On June 30, 1941, he was brought before the Court of Quarter Sessions of Philadelphia County, as of March sessions, nos. 1107 to 1115, and at that time entered a plea of guilty to all of the indictments which had been found against him. At the same time, his counsel stated to the court:

"There is no dispute whatsoever as to the defendant's guilt. He has pleaded guilty to all the bills of indictment, and other matters, not even contained in them."

3. Subsequently, the Commonwealth, through the district attorney, caused the arrest of another city employe, charging him with being a co-conspirator of defendant, Wesley Hargreaves, and with having par-

ticipated with him in the taking of the moneys. A preliminary hearing on the said criminal charges was held before Magistrate Thomas A. Connor, a duly-elected magistrate of the City of Philadelphia, at his office on July 14, 1941.

4. The transcript of the said proceedings which has been offered in evidence in this case clearly indicates that Wesley Hargreaves, defendant in this case, was present at the said hearing before the magistrate, and that he was called to the stand by the district attorney to testify on behalf of the Commonwealth against his alleged accomplice. At this point an attorney appeared for the said Wesley Hargreaves and informed the magistrate that his client "declines to be sworn and declines to testify" on the ground that the examination of the witness would tend to incriminate him by reason of the fact that matters under investigation before the magistrate "are also covered in the bills of indictment to which Hargreaves had entered a plea of guilty, and that no judgment has been entered on that plea of guilty". Defendant thereupon refused to take his oath as a witness. After a discussion between counsel and the magistrate, the witness receded from his position to the limited extent of taking the oath and stating his name and address.

5. The district attorney then asked the witness the following question: "Mr. Hargreaves, you pled guilty to bills of indictment nos. 1107 to 1115 of March sessions, 1941, did you not, on June 30, 1941?" Acting on the advice of his lawyer, defendant replied: "I refuse to answer on the ground that any answer I give may tend to incriminate me." The district attorney then stated: "I ask that the question be answered, because having pled guilty to these indictments, it cannot incriminate him." The magistrate then directly asked the witness, "Will you answer that question?" And the witness categorically replied, "No". The district attorney then stated to the magistrate: "If he refuses to

answer the question I have asked, I ask you to hold him and bind him over to court for contempt in refusing to answer a question he has a right to answer and which is not incriminating." The witness replied through his lawyer: "He refuses to answer this question."

6. The witness was then asked by the district attorney: "Did you not between May 22, 1940, and August 8, 1940, take and appropriate for your use or for the use of others, $21,554.60, money which had been received by you as cashier in branch office no. 3 of the Receiver of Taxes of the City of Philadelphia of which you were employed as cashier?" Acting on the advice of his attorney, the witness replied: "I refuse to answer that on the ground that there is an unfinished case pending against me and tending to incriminate me." The witness was then asked: "Q. As a matter of fact, you pleaded guilty the 30th of June to taking that sum of money, did you not?" And the witness replied, "I refuse to answer."

7. The witness was then asked: "Did you not receive checks that were mailed to the central office and brought out to you, which enabled you to take cash in your office and put in checks in place of cash?" To this the witness replied: "I refuse to answer on the ground that it will incriminate me, also there is an unfinished case pending against me." The witness was then asked: "You have pleaded guilty, have you not, to these facts?" The witness made no answer, and the magistrate asked him: "Do you care to answer the question of Mr. Barr?" And the witness categorically replied: "No".

8. The witness was then asked: "How much of this money did you give to McGowan?" (one alleged accomplice). And he replied: "I refuse to answer on the ground it will tend to incriminate me and there is an unfinished case against me."

9. The magistrate then announced that he would hold the witness under $800 bail for contempt, indi-

cating that there was nothing else that he could do in view of the witness' refusal to testify.

10. Because of the refusal of defendant to testify the Commonwealth was unable to proceed with its prosecution of the alleged accomplice.

Under the evidence, I consider it my duty to find defendant guilty as charged.

Although in Pennsylvania a magistrate or justice of the peace, unlike a judge of a court of record, has no power summarily to commit a recalcitrant witness for contempt: Albright v. Lapp, 26 Pa. 99 (1856) ; Commonwealth v. Waite, 13 D. & C. 191 (1929) ; this does not mean that justice is so feeble that a witness may with impunity contumaciously impede a proper hearing or investigation conducted by a magistrate. Such conduct constitutes an obstruction of justice which is a misdemeanor at common law. The magistrate therefore may, as was done in this case, hold such witness in bail for action by the grand jury, and if an indictment is found the witness may be tried and, if found guilty, punished as in case of other misdemeanor: Brooker v. Commonwealth, 12 S. & R. 175 (1824) ; Commonwealth v. McClure, 10 W. N. C. 466 (1881) ; Commonwealth v. Higgins, 5 Kulp 269 (1889). See also Sadler's Criminal Procedure (2nd ed.), sec. 120.

On the other hand, it is equally clear that, except where the privilege of self-incrimination is waived, a witness need not answer any question which may tend to incriminate him, and his refusal to answer a question on this ground, when his claim of immunity is legally well founded, does not constitute either a contempt of court or an obstruction of justice: In re Adjudication of Contempt of Myers and Brei, 83 Pa. Superior Ct. 383 (1924).

In the present case, however, it clearly appears that defendant by his plea of guilty to the indictments found against him in connection with his embezzlement of the city funds, etc., waived his privilege against self-

incrimination. As was well said by our Superior Court in Commonwealth v. Tracey, 137 Pa. Superior Ct. 221, 225 (1939):

"Remaining silent whenever it reasonably appears that the testimony of a witness may result in self-incrimination is a personal privilege, and since it is but a privilege, it may be waived: *Commonwealth v. Bolger*, supra. A waiver may result from former acts, e.g., by admissions or the giving of testimony: *Com. v. House*, 6 Pa. Superior Ct. 92. And the privilege against self-incrimination when once waived cannot be reasserted: 3 Wharton Crim. Ev. 1144; *Commonwealth v. House*, supra.

"What the constitution and the Act of 1887 guarantee is the protection of a witness from incriminating himself. Where he has already done so by a solemn admission of guilt in a plea to the charge, he must be regarded as having waived his privilege, for any testimony he could give, necessarily would be less incriminating in degree than his absolute plea of guilty to the charge: *State v. Knudtson*, 11 Idaho 524, 83 P. 226 . . . The fact that judgment may not have been entered on the plea of guilt and sentence imposed, is of no moment. It is not the judgment of the court but the voluntary act of the witness himself which makes the waiver irrevocable."

Furthermore, as has been said by the Superior Court in Commonwealth v. Bolger, 42 Pa. Superior Ct. 115, 121, 122 (1910):

" 'In preserving the privilege, [against self-incrimination] we must resolve not to give it more than its due significance. We are to respect it rationally for its merits, not worship it blindly as a fetish . . . The relator [the witness] was not the final arbiter of the question whether his answers to the interrogatories propounded would tend to criminate him . . . To entitle a party called as a witness to the privilege of silence the court must see, from the circumstances of the

case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer . . .' "

Under the circumstances of this case there was no reasonable ground whatever to apprehend danger to the witness from his being compelled to answer questions with respect to matters as to which he had already pleaded guilty.

Defendant also contends that he was within his rights in refusing to answer the questions propounded to him by reason of the following additional circumstances: Before defendant pleaded guilty to the said indictments in the court of quarter sessions and before the warrant was issued for the arrest of his alleged accomplice, the City of Philadelphia instituted civil proceedings against defendant in Court of Common Pleas No. 5 of Philadelphia County as of December term, 1940, no. 5108. In these proceedings, a warrant of arrest was issued against defendant under the Act of July 12, 1842, P. L. 339, 12 PS §259, whereby he was brought before the judges of that court and questioned concerning the circumstances surrounding the said embezzlement of the city funds. Counsel for defendant at that time objected to his client being compelled to answer the questions on the ground that the answers would tend to incriminate defendant. The court overruled the objection and defendant thereupon made a full disclosure of the facts directly implicating his alleged accomplice. Immediately thereafter, and as a result of the information so disclosed by defendant, the Commonwealth instituted the aforementioned criminal proceedings against defendant's accomplice before the said magistrate.

Defendant now contends that he could not lawfully be compelled to testify in the said proceedings before the magistrate because of the provisions of section 22 of the Act of July 12, 1842, P. L. 339, 12 PS §271, which are as follows:

"No person shall be excused from answering any bill seeking a discovery in relation to any fraud prohibited by this act, or from answering as a witness in relation to any such fraud, but no such answer shall be used in evidence in any other suit or prosecution."

There is no merit to this contention for the following reasons:

1. The mere fact that a criminal warrant was issued against a third person on the basis of the matters disclosed by defendant in the said civil proceedings is not such "use in evidence" of defendant's testimony as to bring it within the prohibition of this section of the act.

2. The phrase "no such answer shall be used in evidence in any other suit or prosecution" means "in any other suit or prosecution in which the person, who has been so compelled to testify, is a party". It has no application to a suit or prosecution in which not he, but an accomplice, is a party. See Commercial Banking Corp. v. Paulman, 31 Del. Co. 333 (1942).

3. Moreover, in any event, the said section of the act can have no application where he has waived his right to remain free from self-incrimination by formally pleading guilty to the crime charged, as was done in this case.

It is further contended that defendant could not be prosecuted for his refusal to answer questions because, after he asserted his immunity against self-incrimination, "he was not directed by the magistrate to answer".

Counsel would have us believe that when defendant asserted his constitutional immunity against self-incrimination the magistrate, instead of ruling on the propriety of the question, "simply held him in bail for court", and that in effect what we have in this case is simply a witness who is sought to be punished criminally merely because he asserted his immunity against self-incrimination. A careful reading of the transcript of the proceedings before the magistrate indicates that there is no merit in this argument. As already pointed

out, when the witness refused to answer a question put to him on the ground of self-incrimination the district attorney insisted that the witness answer because, having pleaded guilty to the indictment, the answer could not incriminate the witness. At this point, the magistrate addressed the witness by asking, "Will you answer that question?" Under the circumstances, this query must be construed as a definite overruling of the witness' objection and there is no doubt but that it was so understood both by the witness and his attorney.

Furthermore, defendant received ample notice that if he persisted in his refusal to answer questions he would be held in bail for contempt. Attention is directed to the fact that the district attorney stated to the magistrate in the presence of this witness: "If he refuses to answer the question I have asked, I ask you to hold him and bind him over to court for contempt." To which the witness replied through his lawyer: "He refuses to answer this question."

It is also apparent that the magistrate exhibited a great deal of patience toward defendant and held him in bail for contempt only because there was nothing else he could do "if he refuses to testify where there is so much involved". In our opinion the argument that there was no positive order to answer is without merit.

Counsel for defendant further argues that defendant ought not to be convicted of obstructing justice because in refusing to answer the questions before the magistrate, on the alleged ground of self-incrimination, he acted on the advice of counsel. There is no merit in this contention. "The fact that a person honestly believes that he has a right to do what the law declares to be illegal will not affect the criminality of his act. The advice of counsel furnishes no excuse to a person for violating the law, and cannot be relied on as a defense in a criminal action": 8 R. C. L., sec. 95.

"The rule that ignorance of the law is no excuse applies where the crime charged is malum prohibitum only, as well as where it is malum in se; also it is ap-

plicable to a public officer, to a person who acts in good faith under the advice of counsel . . .": 22 C. J. S. 115, §48.

"To hold otherwise would be placing the advice of counsel above the law itself. Each person charged with an offense must know what the law is and he acts at his own peril": Needham et al. v. State, 55 Okla. Cr. 430 (1934), 32 P. (2d) 92. Such a ruling is necessary on grounds of public policy. See Hunter v. State, 158 Tenn. 63 (1928), 12 S. W. (2d) 361.

This case must be distinguished from criminal prosecutions under statutes which make certain acts criminal only if done wilfully or corruptly. In prosecutions for such statutory offenses the fact that a lawyer advised the doing of an act, and that the client followed his advice in good faith, may negative the specific intent necessary to constitute the crime under the statute. See, for example, United States v. Murdock, 290 U. S. 389 (1933). While the common-law offense of obstructing justice requires concurrence of a criminal act and a criminal intent, it is not required that the criminal intent be a specific intent corruptly to interfere with the administration of justice. The required criminal intent is established if it is made to appear that the wrongful act of the defendant which obstructed justice was done deliberately and intentionally. That element is here present.

Furthermore, since defendant knew that he had pleaded guilty to the indictments which charged him with embezzlement from the city, his refusal to testify against his alleged accomplice was obviously not for the purpose of protecting himself from criminal prosecution but actually for the purpose of protecting his alleged accomplice.

Under the circumstances, I find that there was no legal excuse whatsoever for defendant's refusal to testify before the magistrate and I therefore adjudge defendant guilty as charged.