STATE of Tennessee, Appellee,

v.

Anthony ANDERSON, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Dec. 14, 1994.

Julie K. Pillow, Asst. Public Defender, Somerville, for appellant.

Charles W. Burson, Atty. Gen., Lynn Cashman, Asst. Atty. Gen., Nashville, Elizabeth T. Rice, Dist. Atty. Gen., Bill Randolph, Asst. Dist. Atty. Gen., Somerville, for appellee.

## *OPINION*

TIPTON, Judge.

The defendant, Anthony Anderson, was convicted by a jury in the Lauderdale County Circuit Court of the Class E felony offense of escape from a penal institution. He was sentenced as a Range III, career offender to four years in the custody of the Department of Correction. In this appeal as of right, the defendant asserts that:

(1) The trial court should have dismissed the indictment because the defendant did not have adequate notice under due process that his conduct constituted an escape.

(2) The trial court should have admitted into evidence the Department of Correction rules and regulations defining escape and breach of trust because they were relevant to the defendant's intent.

(3) The trial court should have excluded from the evidence certified copies of the defendant's previous convictions which had

not been provided to him pursuant to discovery.

We affirm the conviction.

The evidence established that the defendant was a prisoner at Fort Pillow State Prison as a result of his convictions for receiving stolen property, voluntary manslaughter, and four armed robberies. Certified copies of the voluntary manslaughter and armed robbery convictions were admitted into evidence. On the evening of March 21, 1993, he was found to be absent from the prison without permission. He was later found at the end of Highway 87 walking toward Highway 51. Although ordered to stop, the defendant continued walking until he was physically stopped. Ultimately, he was returned to the prison.

The defendant testified that he was from Memphis. He indicated that he walked away from the prison because some family difficulties had arisen and he felt that the lives of his children were in jeopardy. He said he did not intend or attempt to hurt anyone, but he admitted that he did not immediately surrender upon being found. He admitted that he had been convicted in 1990 for voluntary manslaughter and four armed robberies.

. I

█ The first two issues are related and will be considered in conjunction with each other. The defendant asserts that the Department of Correction rules and regulations defined escape as the unauthorized leaving of a medium or high security facility or the leaving of any facility with actual or threatened violence. Leaving a lower security facility without actual or threatened violence constituted a "breach of trust." He argues that these rules and regulations carry the force of law, but that they are unconstitutionally vague because they fail to give him sufficient notice of what constitutes an escape.

█ As the state points out, though, the premise to the defendant's argument misapprehends the nature of the prosecution. The defendant was charged with escaping from a penal institution in which he was confined as a result of a sentence received for a felony

conviction. T.C.A. § 39–16–605(a) and (b)(2). For the purposes of the crime of escape, an escape is an "unauthorized departure from custody" from a penal institution, which is one used to house or detain a person convicted of a crime. *See* T.C.A. § 39–16–601(3) and (4)(A). Due process of law requires that a person may only be held criminally responsible for conduct which he or she could reasonably understand to be prohibited. *See United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); *Leech v. American Booksellers Ass'n,* 582 S.W.2d 738, 746 (Tenn.1979). Certainly, the escape statutes provide the required notice.

■ Also, we presume that a person knows the law. *See, e.g., Hunter v. State,* 158 Tenn. 63, 12 S.W.2d 361, 363 (1928); *State ex rel. Davis v. Thomas,* 88 Tenn. 491, 12 S.W. 1034 (1890); *McGuire v. State,* 26 Tenn. (7 Hum.) 39, 40 (1846). In this respect, the fact that the Department of Correction may promulgate rules and regulations for the purpose of controlling the conduct of prisoners in penal institutions, including by means of internal discipline, is wholly irrelevant to what constitutes an offense.

■ Next, the defendant contends that he was entitled to prove the substance of the Department of Correction rules and regulations dealing with escape and breach of trust as they relate to his intent. Outside the presence of the jury, he proffered an associate warden at Fort Pillow who proved the existence of the questioned Department of Correction regulations. He also proffered a Fort Pillow inmate who testified that he was a legal advisor to other inmates and that the Department of Correction rules and regulations had resulted in confusion among the inmates about what constituted an escape.

■ The defendant cites *State v. Richards,* 626 S.W.2d 717, 718 (Tenn.Crim.App. 1981), as authority that escape requires an "intentional" departure from the institution. In response, the state cites *Ray v. State,* 577 S.W.2d 681 (Tenn.Crim.App.1978), for the proposition that state of mind has no bearing on guilt for the crime of escape. However, both parties ignore T.C.A. § 39–11–301(c) which provides that when a statute defining a criminal offense "does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state." This provision applies in this case because the escape statutes make no reference to a requisite mental state. Thus, although the general state of mind of the defendant is a relevant consideration in determining whether the offense of escape occurred, *see, e.g., State v. James G. Wingard,* 891 S.W.2d 628, 635–36 (Tenn.Crim.App. 1994), it is not necessarily limited to the issue of whether or not the defendant intentionally departed from custody.

■ In any event, the flaw in the defendant's position is that even if he thought that his departure from custody was only a breach of trust under the Department of Correction rules and regulations, it would be no less an intentional or knowing departure. In fact, the defendant's contention is, in reality, nothing more than a claim that he was ignorant of the law. As we previously stated, such a claim does not provide a defense, an excuse, or justification. Under these circumstances, the trial court was entitled to exclude the proffered evidence.

## II

■ The defendant contends that he is entitled to a dismissal of the case or a reversal of the conviction because the state failed to comply with discovery by failing to provide to him copies of his prior convictions before trial. He relies upon Rule 16(a)(1)(B), Tenn.R.Crim.P., which requires the state, upon the defendant's request, to furnish to the defendant "such copy of his prior criminal record, if any, as is within the possession, custody or control of the State, the existence of which is known, or by the exercise of due diligence may become known, to the district attorney general."

The defendant filed a motion requesting that the state furnish him "the record of prior criminal convictions of the defendant." Also, the defendant filed a request for notice from the state of the evidence it intended to use in its case-in-chief in order that he may have the opportunity to seek suppression, but the request did not specify the defendant's previous convictions. The state filed a notice

of intent to seek enhanced punishment and of convictions for impeachment purposes that contains the date of conviction, county of conviction, and nature of conviction for each offense involved in this issue. We note, as well, that the indictment specifies these offenses as the bases for the defendant being in custody. Also, a general discovery order was entered by the trial court granting the defendant "discovery pursuant to Rule 16, Tennessee Rules Criminal Procedure" and stating that if the state fails to comply or if there is a dispute regarding discovery, "the Court will rule upon the filing of an applicable Motion."

Thus, the record reflects that the state notified the defense of the convictions it intended to introduce and that the defense was aware of those convictions. However, given the fact that the state intended to introduce certified copies of the judgments of conviction, it was obligated under Rule 16(a)(1)(C) to produce such documents for the defendant to inspect and copy or photograph.

When the state sought to introduce the certified copies of the judgments of conviction, the defendant objected because copies had not been provided before trial. At one point, the state asserted that it believed that notice of the convictions was the only thing it was supposed to provide. In response, the defendant stated that during the discovery conference, the state had said that "there was no discovery in this matter," meaning that there was nothing to produce.

Under the circumstances in this case, the state should have produced the certified copies for the defendant's inspection and should have delivered copies to the defendant. However, it was not an abuse of discretion for the trial court to allow the certified copies into evidence, given the extent of the defendant's admitted knowledge before trial of the prior convictions and of the state's intent to prove them. With such knowledge before trial and the defendant's failure to seek enforcement as provided by the trial court's discovery order, it was reasonable for the trial court to reject using the strong sanction of excluding the documents from the evidence. In this respect, we note that the defendant does not assert that the certified copies are incorrect or untrustworthy nor does he point to any prejudice resulting from the lack of pretrial inspection of the copies.

In consideration of the foregoing and the record as a whole, the judgment of conviction is affirmed.

JONES and PEAY, JJ., concur.